UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| FRANCISCO DARIO MACEDO SOLANO,<br><br>Petitioner,<br><br>v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,<br><br>Respondent. | Case No. 5:26-cv-04609-DTB<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |

**I.**

**PRIOR PROCEDURAL HISTORY**

**A. Francisco Dario Macedo Solano v. U.S. Immigration and Customs Enforcement; Case No. 5:26-cv-02815-MWC-DTB ("Solano I")**

On May 21, 2026, petitioner Francisco Dario Macedo Solano ("Petitioner"), filed the form Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, accompanied by supporting exhibits in Solano I. (Solano I, Docket No. 1).

/ / /

/ / /

/ / /

The Petition in Solano I alleged that Petitioner was being subject to a prolonged and indefinite detention in violation of the Fifth Amendment. (Solano I, Docket No. 1 at 6).[1] Petitioner sought immediate release, or alternatively, a bond hearing. (Id. at 7).

On June 2, 2026 (pursuant to General Order 26-05's expedited briefing schedule, see Solano I, Docket No. 4), Respondent filed an Answer to the Petition, accompanied by an exhibit. (Solano I, Docket No. 8). In the Answer, Respondent acknowledged that Petitioner appeared to be a member of the Bond Eligible Class of detainees certified in Maldonado Bautista v. Santacruz, Case No. 5:25-cv-01873-SSS-BFM, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025), reconsideration granted in part, 813 F. Supp. 3d 1075 (C.D. Cal 2025), amended and superseded on reconsideration, 813 F. Supp. 3d 1084 (C.D. Cal 2025) ("Bautista"), and that, as such, Petitioner was entitled to a bond hearing pursuant to the judgment in Bautista. (Solano I, Docket No. 8 at 2-3 ["Respondent[s] acknowledge[] that Petitioner's claim in this action appears to be subject to the *Bautista* judgment, the order enforcing the same, and to any applicable appellate proceedings relating to it."]).[2]

---

[1] For the parties' pleadings, the Court cites to the CM/ECF pagination at the top of each page.

[2] The members of the certified Bond Eligible Class in Bautista are: "All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination." Bautista, 813 F. Supp. 3d at 1077-78.

On December 18, 2025, the court entered final judgment and granted declaratory relief to all members of the Bond Eligible Class. See Bautista, 813 F. Supp. 3d at 1084. Pursuant to the final judgment entered, the court declared that "the Bond Eligible Class members are detained under 8 U.S.C. § 1226(a)" and that "the Bond Eligible Class members are not subject to mandatory detention under § 1225(b)(2), and are entitled to consideration for release on bond by immigration officers and, if not released, a custody redetermination hearing before an immigration judge." Bautista v. Noem, 2025 WL 3678485, at *1 (C.D. Cal. Dec. 18, 2025). On February 18, 2026, the court granted a motion to enforce the declaratory judgment and vacated the Board of Immigration Appeals' decision in Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025) as

In the Answer, Respondent also stated that "[w]hile Petitioner seeks immediate release, to the extent Petitioner would be entitled to any remedy via the Petition, at most it would be ordering a bond hearing to be held before an Immigration Judge under Section 1226(a)." (Id. at 2).

Petitioner did not file a Reply.

On June 29, 2026, the Court issued its Report and Recommendation ("R&R), wherein it recommended that the Petition be granted and that Respondent be ordered to provide Petitioner with an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a), as well as 8 C.F.R. Sections 1003.19 and 1236.1, and at which the government was to bear the burden of proof by clear and convincing evidence that Petitioner was a flight risk or danger to the community. (Solano I, Docket No. 12).

---

contrary to law under the Administrative Procedures Act. Bautista v. Santacruz, 2026 WL 468284, at *12 (C.D. Cal. Feb. 18, 2026). "On March 6, 2026, the Ninth Circuit administratively stayed the December 18, 2025 declaratory judgment in [Bautista] 'insofar as [it] extends beyond the Central District of California' pending a ruling on the Government's motion for a stay pending appeal." Castro v. Johnson, Case No. 5:26-cv-01592-PVC, 2026 WL 1104766, at *3 (citation omitted). "On March 31, 2026, the Ninth Circuit granted the government's emergency motion for a stay pending appeal as follows: (1) the Bautista court's December 18, 2025 class certification order and final judgment is stayed pending appeal, insofar as they extend beyond the Central District of California; and (2) the district court's February 18, 2026 post-judgment order vacating Matter of Yajure Hurtado, 29 I. & N. Dec. 216 (BIA 2025) is stayed pending appeal." Vivas v. Santacruz, Case No. 5:26-cv-01926-JFW-KES, 2026 WL 1122208, at *1 (C.D. Cal. Apr. 20, 2026) (citation omitted). Therefore, "the Bautista court's December 18, 2025 judgment remains in place as to the Central District of California." Id. On April 10, 2026, the Ninth Circuit granted the parties' request to suspend the briefing schedule in Bautista pending the Ninth Circuit's decision in Rodriguez Vasquez v. Bostock, et al., No. 25-6842. (See Bautista, No. 25-7958, 26-1044, Dkt. No. 16). On July 30, 2026, the Ninth Circuit issued its opinion in Rodriguez Vasquez, 183 F.4th 1160 (9th Cir. 2026) upholding the reasoning and conclusion of the Judgment in Bautista.

As such, the declaratory judgment entered in Bautista has "the force and effect of a final judgment or decree." 28 U.S.C. § 2201(a); see also Haaland v. Brackeen, 599 U.S. 255, 293 (2023) ("After all, the point of a declaratory judgment is to establish a binding adjudication that enables the parties to enjoy the benefits of reliance and repose secured by res judicata.") (citation and internal quotation marks omitted). As parties to Bautista, Respondents are obligated to comply. See Maness v. Meyers, 419 U.S. 449, 458 (1975) ("We begin with the basic proposition that all orders and judgments of courts must be complied with promptly.").

On July 7, 2026, the District Judge accepted the R&R and Judgment was entered. (Solano I, Docket Nos. 14-15).

On July 15, 2026, Respondent filed a Notice of Compliance informing the Court that on July 14, 2026, Petitioner received a bond hearing,, in which the burden was placed on Department of Homeland Security ("DHS") and the immigration judge determined that Petitioner was a danger due to his criminal history, and that Petitioner also was a flight risk, and therefore denied bond. (Solano I, Docket No. 16).

## II.

## PROCEDURAL HISTORY

On August 13, 2026, Petitioner, proceeding pro se, filed the instant Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition"), accompanied by exhibits (Docket No. 1) and a Motion for Appointment of Counsel (Docket No. 2). The Court referred this matter to the Federal Public Defender, which accepted the referral and filed a Notice of Appearance on August 21, 2026. (Docket No. 9).[3]

The Petition alleged the following grounds for habeas relief: (1) Petitioner's arrest was unlawful; and (2) Immigration and Customs Enforcement ("ICE") violated Petitioner's right to be free in violation of the Fourth Amendment. (Docket No. 1 at 6).[4] The Petition sought Petitioner's release from custody. (Id. at 7).

On August 21, 2026 (pursuant to General Order 26-05's expedited briefing schedule, see Docket No. 5), Respondent filed an Answer to the Petition ("Answer to Petition") (Docket No. 10), accompanied by exhibits (Docket Nos. 10-1 through 10-4. In the Answer to Petition, Respondent asserted that Petitioner has been in

---

[3] In light of the Federal Public Defender's Notice of Appearance, Petitioner's Motion for Appointment of Counsel (Docket No. 2) is GRANTED.

[4] For the parties' pleadings, the Court cites to the CM/ECF pagination at the top of each page.

immigration detention since he was taken into custody on December 16, 2025, following a drug-related arrest on September 30, 2025, and because his removal order is not final during the appeal period, Petitioner is detained pursuant to 8 U.S.C. § 1226(a). Respondent opposed Petitioner's release because Petitioner has received a bond hearing and has not appealed that order to the Board of Immigration Appeals, and therefore, according to Respondent, that custody redetermination is appropriately assessed through the administrative process available to Petitioner before the Executive Office for Immigration Review ("EOIR"). (Docket No. 10 at 2).

On September 18, 2026, Petitioner filed a Reply to the Answer ("Reply to Answer") (Docket No. 16), accompanied by an exhibit (Docket No. 16-1). In the Reply to Answer, Petitioner requested that the Court allow leave to amend if it finds that new arguments have been raised. (Docket No. 16 at 21-22). Since the Reply to Answer appeared to raise a new claim challenging the constitutional adequacy of Petitioner's bond hearing (see id. at 18-19), on September 24, 2026, the Court allowed Petitioner the opportunity to amend the Petition to formally raise such a claim. (Docket No. 17).

On September 29, 2026, Petitioner filed a First Amended Petition for Writ of Habeas Corpus ("FAP") (Docket No. 18), accompanied by exhibits (Docket No. 8-1). In the FAP, Petitioner raises the following claims: (1) Petitioner's warrantless arrest violated 8 U.S.C. § 1226(a) and his right to procedural due process under the Fifth Amendment; (2) Petitioner's detention is in violation of 8 U.S.C. § 1226 and the Bautista Judgment; (3) Petitioner's due process rights were violated because he was detained without a pre-deprivation hearing; and (4) the bond decision violates due process because the EOIR is systemically incapable of neutral adjudication and the bond memorandum shows signs of bias. (Id. at 18-29). Petitioner seeks immediate release from custody. (Id. at 9, 31).

On October 2, 2026, Respondent filed an Answer to the FAP ("Answer"). (Docket No. 20).

On October 5, 2026, Petitioner filed a Reply to the Answer ("Reply"). (Docket No. 21).

Thus, this matter is now ready for decision. For the reasons set forth below, the Court grants the FAP.

## III.
## BACKGROUND

Petitioner is a native and citizen of Mexico. (Solano I, Docket No. 1 at 9, Docket No. 8-1 at 1-2; FAP at 9-10). On or about October 23, 2017, Petitioner entered the United States without inspection, admission, or parole. (Solano I, Docket No. 1 at 9, Docket No. 8-1 at 1-3). On an unspecified date, Petitioner applied for asylum. (Solano I, Docket No. 1 at 2, 6, 9-23).

Since his arrival in the United States, he has built a stable and productive life with his family, including his five year old daughter, a United States citizen. (FAP at 11). Petitioner has had a stable address for more than two years and stable employment for nearly as long. (Id.).

On September 30, 2025, Petitioner was arrested for possession of a controlled substance, Cal. H&S Code § 11377(A). (Docket No. 10-3 at 3). The charge remains pending, and Petitioner otherwise has no material criminal record. (See, e.g., Docket No. 18-1 at 13-14).

On December 16, 2025, ICE agents arrested and detained Petitioner in San Bernardino. (Solano I, Docket No. 1 at 1-2, 4, Docket No. 8-1 at 2; FAP at 12). Petitioner alleges that he was stopped by a group of men in civilian clothing with face masks, was handcuffed, and was placed in a car. (FAP at 12). He was not advised as to why he was seized, nor was he presented with an arrest warrant or any other legal document. (Id.). On December 29, 2025, DHS issued Petitioner a Notice

to Appear, charging Petitioner as subject to removal pursuant to Immigration and Nationality Act § 212(a)(6)A)(i) as "an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." (Solano I, Docket No. 1 at 24-26; FAP at 12).

Petitioner is being detained at the Adelanto ICE Processing Center in Adelanto, California. (FAP at 9; see https://locator.ice.gov/odls/#/results).

## IV.

## LEGAL AUTHORITY

A writ of habeas corpus is "available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A noncitizen in the custody of immigration authorities may bring a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on the grounds of their detention violates the Constitution or other federal laws. 28 U.S.C. § 2241(c)(3); Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001) (federal courts retain jurisdiction to consider habeas relief under Section 2241 for noncitizens subject to detention following an order of removal).

Here, Petitioner has raised claims under the Due Process Clause of the Fifth Amendment, which prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const., amend. V. These protections extend to noncitizens

present in the United States. See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.") (internal quotation marks omitted); Zadvydas, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings.") (internal quotation marks and brackets omitted)). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). Indeed, the Due Process Clause provides both procedural and substantive protections. See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process.") (internal quotation marks omitted). To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (applying Mathews to due process challenge to immigration detention, and noting that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context"); López v. Wofford, Case No. 1:25-cv-01226-KES-SKO (HC), 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025) (collecting cases extending Mathews "to the context of immigration detention"). Under Matthews, courts weigh the following three factors: (1) "[T]he private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the

procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

## V.

## DISCUSSION[5]

Petitioner alleges that the government's denial of the procedural protections afforded by 8 U.S.C. § 1226(a) ("Section 1226(a)") violated his right to due process under the Fifth Amendment, and that the government failed to comply with the Judgment in Bautista. (FAP at 14-18). The Court agrees.

Initially, the Court notes that Respondent failed to respond to Petitioner's allegations in both the Petition and the FAP that Petitioner was denied Section 1226's procedural protections by virtue of his warrantless arrest and the failure of immigration officials to provide him with an initial custody determination. While Respondent raises other arguments regarding the FAP (see Docket No. 20 at 2-5), Respondent does not specifically address the substance of Petitioner's claims. Accordingly, the Court construes Respondent's failure to contest the factual substance of Petitioner's due process claim as a concession to the validity thereto pursuant to Central District of California Local Civil Rule 7-12. See also Martinez

---

[5] As an initial matter, the Court rejects Respondent's contention in the Answer that Petitioner must first exhaust his remedies with the Board of Immigration Appeals ("BIA") (see Docket No. 10 at 2-4; Docket No. 20 at 2-4). Constitutional claims are generally excepted from the exhaustion requirement because neither immigration judges nor the BIA are permitted to consider constitutional challenges to the statutes they administer. Sola v. Holder, 720 F.3d 1134, 1135 (9th Cir. 2013).

v. Sessions, 873 F.3d 655, 660 (9th Cir. 2017) ("The government does not offer any argument on the merits of this petition; therefore, it has waived any challenge to the arguments [the petitioner] raised.").

It is undisputed that on December 16, 2025, Petitioner was arrested without a warrant during a targeted enforcement operation in Fontana, and that ICE has raised no exception to the warrant requirement. (FAP at 12, 14-15). There is no indication that, following his arrest, Petitioner was provided with an initial custody determination by an immigration official. Petitioner remained in custody following his arrest and detention and was only provided a custody determination hearing after the Court ordered Respondents to provide such on July 7, 2026, more than seven months after his arrest. (See Solano I, Docket Nos. 14-15). On these facts, Petitioner contends that his arrest and detention violate Section 1226(a) and the Due Process Clause of the Fifth Amendment. (FAP at 14-25). The Court agrees.

Section 1226(a) "sets out the general rule" for the arrest, detention, and release of noncitizens present in the country who are believed to be subject to removal. Nielsen v. Preap, 586 U.S. 392, 396 (2019). Under Section 1226(a) and its implementing regulations, a DHS officer may arrest and take into custody a noncitizen "under the authority of Form I-200, Warrant of Arrest" issued by certain designated supervisory officers. 8 C.F.R. § 236.1(b). The Government "may" detain such individuals "pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a). DHS officers conduct an initial custody determination. 8 C.F.R. § 1236.1(c)(8). Unless the person is subject to mandatory detention based on their criminal history, 8 U.S.C. § 1226(c), DHS has "the discretion either to detain the [noncitizen] or to release him on bond or parole." Nielsen, 586 U.S. at 396. The DHS officer may release the noncitizen if the noncitizen "demonstrate[s] to the satisfaction of the officer that such release would

not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8).

After the initial custody determination, the noncitizen may request that an immigration judge review the DHS officer's determination at a bond hearing in immigration court. See 8 C.F.R. § 1236.1(d)(1) (permitting a noncitizen to request amelioration of the condition of release in front of an immigration judge "after an initial custody determination"); 8 C.F.R. § 1003.19 ("Custody and bond determinations made by the service pursuant to 8 CFR part 1236 may be reviewed by an Immigration Judge pursuant to 8 CFR part 1236."). "If at this hearing the detainee demonstrates by the preponderance of the evidence that he is not 'a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk,' the [Immigration Judge] will order his release." Rodriguez Diaz, 53 F.4th at 1197 (quoting Matter of Guerra, 24 I. & N. Dec. 37, 40 (BIA 2006)). The noncitizen can "appeal an adverse decision to the [Board of Immigration Appeals]." Id. (citing 8 C.F.R. § 236.1(d)(3)). Alternatively, "an individual detained pursuant to § 1226(a) may request an additional bond hearing whenever he experiences a material change in circumstances." Id. (citing 8 C.F.R. § 1003.19(e)). "The same procedures apply to this new hearing, and its outcome is also appealable to the [Board of Immigration Appeals]." Id. The noncitizen may also seek judicial review of the bond determination through a habeas petition challenging the determination as constitutionally deficient, legally erroneous, or an abuse of discretion. See Martinez v. Clark, 124 F.4th 775, 784 (9th Cir. 2024).

Reviewing this statutory and regulatory framework, the Ninth Circuit has observed that "Section 1226(a) and its implementing regulations provide extensive procedural protections that are unavailable under other detention provisions, including several layers of review of the agency's initial custody determination, an initial bond hearing before a neutral decisionmaker, the opportunity to be

represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." Rodriguez Diaz, 53 F.4th at 1202.

Here, it appears that Petitioner was not arrested and detained pursuant to Section 1226(a), but was instead subjected to the DHS Policy, issued on July 8, 2025 and entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission," in which DHS announced that it had "'revisit[ed] its legal position on detention and release authorities,' determining that Section 235 of [INA] would serve as the applicable immigration detention authority rather than Section 236 for all 'applicants for admission.'" Bautista, 813 F. Supp. 3d at 1094 (quoting the July 8, 2025 notice). "In other words, the change in policy requires ICE employees to consider anyone arrested in the United States and charged with being inadmissible as an 'applicant for admission' under 8 U.S.C. § 1125(b)(2)(A)." Id. The Board of Immigration Appeals ("BIA") has since issued a decision agreeing with DHS's position that such individuals are properly subject to 8 U.S.C. § 1225(b) ("Section 1225(b)"). See Matter of Yajure-Hurtado, 29 I. & N. Dec. 216 (BIA 2025) .

DHS's new policy significantly impacts the rights of noncitizens like Petitioner and their ability to seek release from immigration confinement. Section 1225 applies to two categories of noncitizens: (1) "Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation"; and (2) "Section 1225(b)(2) . . . serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)." Jennings v. Rodriguez, 583 U.S. 281, 2877 (2018). Under the Government's new policy, noncitizens like Petitioner are categorized as falling within the second category—"applicants for admission" subject to Section 1225(b)(2). Under that provision, a noncitizen "shall be detained for a [removal] proceeding" if an

immigration officer "determines that [they are] not clearly and beyond a doubt entitled to be admitted" into the country. 8 U.S.C. § 1225(b)(2)(A).

The Ninth Circuit has now held that individuals like Petitioner are properly subject to Section 1226(a). Rodriguez Vasquez, 183 F.4th 1160. Moreover, as noted, the final judgment in Bautista has preclusive effect for members of the Bond Eligible Class like Petitioner. See Granados v. Warden, Case No. 5:26-cv-00670-AH-DFM, 2026 WL 852211, at *3 (C.D. Cal. Mar. 25, 2026) ("[I]t appears that Respondents are precluded from relitigating whether "Bond Eligible Class" members—such as Petitioner—are entitled to the relief provided in the Bautista final judgment."); Cortez Lozano v. Santacruz Jr., et al., Case No. 5:26-cv-00313-SSS-BFM, 2026 WL 325462, at *4 (C.D. Cal. Feb. 4, 2026); see generally, De Corral v. Woosley, Case No. 4:25-cv-145-BJB, 2026 WL 524778, at *3 (W.D. Ky. Feb. 25, 2026) ("Under settled principles of collateral estoppel, the Central District's final declaratory judgment binds the parties 'with respect to the matters declared.'") (quoting Restatement (Second of Judgments) § 33).

In this case, Petitioner should have received the protections mandated under Section 1226(a), including arrest pursuant to a lawful warrant (absent an applicable exception), a prompt initial custody determination by an immigration official, the opportunity to have any custody determination reviewed by an immigration judge, and the ultimate review of his custody status by the BIA. However, because the government arrested Petitioner under the incorrect authority of Section 1225(b), Petitioner was deprived of these protections and received none of the process he was due. Petitioner alleges—and Respondent does not dispute —that Petitioner was arrested without a warrant. (FAP at 12, 14-16). When he was taken into custody, there was no initial custody determination by an immigration official that he was a flight risk or a danger, and he was not afforded the opportunity for a custody redetermination by an immigration judge, much less review by the BIA.

Notwithstanding Respondent's concession that Petitioner "appeared" to be detained pursuant to Section 1226(a) (Solano I, Docket No. 8 at 2-3), the government denied Petitioner the protections afforded by the statute it conceded was applicable.

Accordingly, the Court joins the numerous courts in the Ninth Circuit which have found that the government's noncompliance with Section 1226(a), Bautista and similar rulings warrants release. See e.g., Reyes v. Santacruz, Jr., Case No. 5:26-cv-03394-E, 2026 WL 2069974, at *2 (C.D. Cal. July 13, 2026); Garcia-Maya v. Mattos, Case No. 2:26-cv-01513-RFB-BNW, 2026 WL 1965886, at *7 (D. Nev. July 7, 2026); Rodas-Dieguez v. Noem, Case No. 3:26-cv-00976-RBM-MMP, 2026 WL 549910, at *1 (S.D. Cal. Feb. 26, 2026); Maciel v. Noem, Case No. 1:26-cv-01318-DC-CKD, 2026 WL 496948, at *5 (E.D. Cal. Feb. 23, 2026); see also Moctezuma v. Henkey, Case No. 1:25-cv-00741-BLW, 2026 WL 18809, at *5 (D. Idaho Jan. 2, 2026) (observing that "[i[n recent months, courts across the country have ordered the release of detainees in similar situations" and collecting cases).

As these courts have found, release is an appropriate remedy given the nature of the violations at issue. "Section 1226(a) and its implementing regulations provide extensive procedural protections that are unavailable under" Section 1225(b). Rodriguez Diaz, 53 F.4th at 1202. As discussed, these protections include: (1) The requirement that DHS generally obtain a warrant, issued following supervisory review, to arrest a noncitizen; (2) an initial custody determination by a DHS officer shortly after the noncitizen's arrest; (3) if the noncitizen is not released at the initial custody determination, the right to seek review before an Immigration Judge at a bond hearing; (4) the right to appeal an adverse Immigration Judge bond ruling to the BIA and to seek federal court review in habeas; and (5) the right to seek a new bond hearing before an Immigration Judge based on changed circumstances. Section 1226(a) and its implementing regulations therefore provide "several layers of

review" to protect against erroneous deprivations of liberty. Rodriguez Diaz, 53 F.4th at 1202.

Therefore, it follows that "Petitioner's detention 'was unlawful from its inception because ICE detained him under the wrong statute and without affording him any notice or process whatsoever, much less the procedures due under Section 1226(a).'" Garcia-Maya, 2026 WL 1965886, at *8 (quoting Rodriguez-Acurio v. Almodovar, 811 F. Supp. 3d 274, 319-20 (E.D.N.Y. 2025)). "In the absence of an initial custody determination, which establishes a lawful basis for detention in the first instance, a subsequent bond hearing 'is no substitute for the requirement that ICE engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip' Petitioner of his freedom." Id. (quoting Lopez Benitez v. Francis, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025)). Section 1226(a) provides critical protections that safeguard Petitioner's due process protected interest in freedom from arbitrary confinement. See Garcia-Maya, 2026 WL 1965886, at *5 ("[T]his Court finds that Petitioner is entitled to the procedural protections provided by § 1226(a), not merely by statute and regulation, but also by the Due Process Clause."); Bautista, 813 F. Supp. 3d at 1094 (discussing "the due process protections found within § 1226(a)"); see also Bautista, 820 F. Supp. 3d at 1033 (finding that the Government's noncompliance has led to "detention without due process" and "deprive[d] members of the Bond Eligible Class of their liberty, economic stability, and fundamental dignity"). The Supreme Court has long recognized that due process requires that immigration detention bear a "'reasonable relation'" to a non-punitive purpose. Zadvydas, 533 U.S. at 690 (quoting Jackson v. Indiana, 406 U.S. 715, 738 (1972)). There are two permissible non-punitive purposes for detention under the immigration laws: Ensuring a noncitizen's appearance at removal proceedings or removal and preventing danger to the community. Id. at 690-92. Section 1226(a), and its implementing regulations, establish procedures to ensure that the government

only detains noncitizens where it advances these purposes. By denying Petitioner these protections, Respondent has created an unacceptably high risk that Petitioner's detention is not justified on danger or flight risk grounds and that he remains confined solely due to the government's refusal to comply with the judgment in Bautista.

Because Petitioner's detention has been unlawful from its initiation, the Court concludes that the "most appropriate remedy for this violation would be to return Petitioner to the previous status quo by releasing him from detention." Reyes, 2026 WL 2069974, at *2. The Ninth Circuit has recognized that "the purpose of habeas remedies is to put the defendant back in the position he would have been in if the constitutional violation never occurred." Lujan v. Garcia, 734 F.3d 917, 935 (9th Cir. 2013) (cleaned up); see also United States v. Stein, 541 F.3d 130, 146 (2d Cir. 2008) (recognizing that the "[t]he appropriate remedy for a constitutional violation is one that as much as possible restores" a litigant "to the circumstances that would have existed had there been no constitutional error") (cleaned up). This principle has particular force where, as here, the protections at issue are intended to prevent an unlawful detention in the first place. See United States v. Morrison, 499 U.S. 361, 364 (1981) (observing "the general rule that remedies should be tailored to the injury suffered").

In considering the appropriate remedy for such a due process violation, many courts in this Circuit have found that a post-detention bond hearing does not rectify the harm of a due process violation because the petitioner "will have already suffered the harm" that such petitions raise—his potentially erroneous detention. See e.g., Hasratyan v. Bondi, Case No. 5:26-cv-00210-MCS-ADS, 2026 WL 288909, at *4 (C.D. Cal. Feb. 2, 2026) (concluding that where a petitioner received a procedurally deficient post-detention bond hearing, "the post-detention process Petitioner received and will receive is no substitute for the pre-detention process she was

owed”); Saballos Rosales v. Noem, Case No. 5:26-CV-00112-JWH-MBK, 2026 WL 761371, at *3 (C.D. Cal. Mar. 16, 2026) (granting TRO and finding that “the post-detention process [of a bond hearing] that Rosales did receive, and will receive, is no substitute for the pre-detention process she was owed.”) (citing Hasratyan); Charan S. v. Warden, CA City, Case No. 1:26-cv-3017, TLN-JDP, 2026 WL 1144158, at *6 (E.D. Cal. Apr. 28, 2026) (“The fact that Petitioner was provided with a post-deprivation court-ordered bond hearing does not cure the initial constitutional violation of unlawfully revoking Petitioner’s liberty and detaining him without any process for nearly two months”); Domingo v. Kaiser, Case No. 25-cv-05893 (RFL), 2025 WL 1940179, at *3 (N.D. Cal. July 14 2025); see also Riveros-Sanchez v. City of Easton, 861 F. App’x 819, 822 (3d Cir. 2021) (“[I]f a pre-deprivation hearing was required, then no amount of post deprivation process could cure the . . . initial failure to provide a hearing.”).

As with similar cases in this Circuit, the Court finds that the appropriate remedy in this case is to order Petitioner placed in the position he would have been absent the due process violation—that is, he should be released from custody on the conditions that were initially imposed. See e.g., E.A.T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) (granting such relief); Jasbin v. Warden, Case No. 26-cv-579-JES-BJW, 2026 WL 353354, at *4 (S.D. Cal. Feb. 9, 2026) (ordering release due to due process violation despite government’s argument that the petitioner was only entitled to bond hearing as a Maldonado Bautista class member); Prior v. Chestnut, Case No. 1:25-cv-01131-JLTEPG-HC, 2026 WL 309560, at *9 (E.D. Cal. Feb. 5, 2026) (recommending immediate release as appropriate remedy for due process violation).

Release is particularly warranted given the government’s continued refusal to comply with the final judgment in Bautista. “[I]n suits against government officials and departments, we generally assume that they will comply with declaratory

judgments." United Aeronautical Corp. v. United States Air Force, 80 F.4th 1017, 1031 (9th Cir. 2023). While the government has appealed the Bautista final judgment, "the government is rebelling against the basic principle underlying our constitutional order that 'an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings.'" Garcia-Maya, 2026 WL 1965886, at *9 (quoting United States v. United Mine Workers of Am., 330 U.S. 258, 293 (1947))). Under these circumstances, the Court finds that "law and justice" require Petitioner's release. See Hilton v. Braunskill, 481 U.S. 770, 775 (1987) ("Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters 'as law and justice require.'"); Lujan, 734 F.3d at 933.

For the reasons set forth above, the Court finds that habeas relief is warranted and therefore grants the Petition and issues a writ ordering Petitioner's immediate release from custody.[6]

## VI.

## ORDER

IT THEREFORE IS ORDERED that Judgment be entered: (a) Granting the Petition; (b) ordering Respondent to immediately release Petitioner Francisco Daro Macedo Solano (A# 240-500-142) from custody subject to the same conditions (if any) that he was subject to at the time he was arrested and detained; (c) ordering Respondent to return all property and documents confiscated from Petitioner (if any) during his arrest and processing into detention; (d) enjoining Respondent and its officers, agents, employees, attorneys and persons acting on their behalf in concert or in participation with it, from re-detaining Petitioner without complying with all

[6] The Court's determination that Petitioner is entitled to habeas relief on the first and second claims alleged in the FAP renders it unnecessary for the Court to address the other claims alleged in the FAP.

applicable statutes and regulations, including written notice and a pre-deprivation hearing before a neutral arbiter; and (e) ordering Respondent to file a status report within two (2) business days of the date of this Order to confirm that Petitioner's release from custody is subject to the same conditions (if any) that he was subject to at the time he was arrested and detained.

DATED: October 14, 2026

DAVID T. BRISTOW
UNITED STATES MAGISTRATE JUDGE